# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## MIDDLE DIVISION

| | | |
|---|---|---|
| ROBERT KING, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.: 4:19-cv-00347-JEO |
| | ) | |
| ANDREW SAUL, Commissioner of | ) | |
| Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

Plaintiff Robert King appeals from the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying his application for supplemental security income ("SSI") under the Social Security Act. (Doc. 1).[1] King timely pursued and exhausted his administrative remedies, and the Commissioner's decision is ripe for review. For the reasons discussed below, the court finds that the Commissioner's decision is due to be affirmed.[2]

---

[1] References herein to "Doc(s). __" are to the document numbers assigned by the Clerk of the Court to the pleadings, motions, and other materials in the court file, as reflected on the docket sheet in the court's Case Management/Electronic Case Files (CM/ECF) system.

[2] The parties have consented to the exercise of full dispositive jurisdiction by a magistrate judge pursuant to 28 U.S.C. § 636(c). (Doc. 10).

## I. Procedural History

King was fifty-one years old when he filed his SSI application and fifty-four years old at the time of the decision. (R. 16-27, 139).[3]  He graduated from high school[4] and has past work experience in the fast food industry as a worker, cook and manager.  (R. 45, 175).  His last job was as a fast food manager in 2008.  (R. 175).  He alleges that he is unable to work because of mental health issues.  (R. 174).

King alleges he became disabled on December 9, 2015.  (R. 16, 170).  When the Social Security Administration ("SSA") denied his claims initially, (R. 56-57), King requested a hearing before an Administrative Law Judge ("ALJ"), (R. 79-81). A video hearing was held on February 15, 2018.  (R. 28-52).  Following the hearing, the ALJ denied his claim.  (R. 16-27).  King appealed the decision to the Appeals Council ("AC").  After reviewing the record, the AC declined to further review the ALJ's decision. (R. 1-6).   That decision became the final decision of the Commissioner and is now ripe for review.  *See Frye v. Massanari*, 209 F. Supp. 2d 1246, 1251 (N.D. Ala. 2001) (citing *Falge v. Apfel*, 150 F.3d 1320, 1322 (11th Cir. 1998)).

---

[3] References herein to "R. __" are to the administrative record found at Docs. 6-1 through 6-9 in the court's record.

[4] King testified that he took special education or remedial classes in high school.  (R. 41).

## II. Statutory and Regulatory Framework

To establish his eligibility for disability benefits, a claimant must show "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 416(i)(1)(A), 423(d)(1)(A); *see also* 20 C.F.R. § 404.1505(a). The Social Security Administration employs a five-step sequential analysis to determine an individual's eligibility for disability benefits. 20 C.F.R. § 416.920(b).

First, the Commissioner must determine whether the claimant is engaged in "substantial gainful activity." *Id* "Under the first step, the claimant has the burden to show that []he is not currently engaged in substantial gainful activity." *Reynolds-Buckley v. Comm'r of Soc. Sec.*, 457 F. App'x 862, 863 (11th Cir. 2012).[5] If the claimant is engaged in substantial gainful activity, the Commissioner will determine the claimant is not disabled. At the first step, the ALJ determined King has not engaged in substantial gainful activity since December 11, 2015, the date of his application. (R. 18).

---

[5] Unpublished opinions of the Eleventh Circuit Court of Appeals are not considered binding precedent; however, they may be cited as persuasive authority. 11th Cir. R. 36-2.

If a claimant is not engaged in substantial gainful activity, the Commissioner must next determine whether the claimant suffers from a severe physical or mental impairment or combination of impairments that has lasted or is expected to last for a continuous period of at least twelve months. 20 C.F.R. § 416.920 (a)(4)(ii) & (c). An impairment "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." *See id.* at § 416.921. Furthermore, it "must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [the claimant's] statement of symptoms." *Id.*; *see also* 42 U.S.C. § 423(d)(3). An impairment is severe if it "significantly limits [the claimant's] physical or mental ability to do basic work activities . . . ." 20 C.F.R. § 416.922(c).[6] "[A]n impairment can be considered as not severe only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." *Brady v. Heckler*, 724 F.2d 914, 920 (11th Cir. 1984); *see also* 20

---

[6] Basic work activities include:

> (1) [p]hysical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) [c]apacities for seeking, hearing, and speaking; (3) [u]nderstanding, carrying out, and remembering simple instructions; (4) [u]se of judgment; (5) [r]esponding appropriately to supervision, co-workers and usual work situations; and (6) [d]ealing with changes in a routine work setting.

20 C.F.R. § 416.922(b).

C.F.R. § 404.1521(a). A claimant may be found disabled based on a combination of impairments, even though none of his individual impairments alone is disabling. 20 C.F.R. § 416.920 The claimant bears the burden of providing medical evidence demonstrating an impairment and its severity. *Id.* at § 416.912(a). If the claimant does not have a severe impairment or combination of impairments, the Commissioner will determine the claimant is not disabled. *Id.* at § 416.920(a)(4)(ii) and (c). At the second step, the ALJ determined King has the following severe impairments: degenerative joint disease of right hip and bipolar disorder with psychosis. (R. 18).

If the claimant has a severe impairment or combination of impairments, the Commissioner must then determine whether the impairment meets or equals one of the "Listings" found in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. § 416.920(a)(4)(iii) & (d). The claimant bears the burden of proving his impairment meets or equals one of the Listings. *Reynolds-Buckley*, 457 F. App'x at 863. If the claimant's impairment meets or equals one of the Listings, the Commissioner will determine the claimant is disabled. 20 C.F.R § 416.920(a)(4)(iii) and (d). At the third step, the ALJ determined King did not have an impairment or combination of impairments that meet or medically equal the severity of one of the Listings. (R. 19-21).

If the claimant's impairment does not meet or equal one of the Listings, the Commissioner must determine the claimant's residual functional capacity ("RFC") before proceeding to the fourth step. 20 C.F.R. § 416.920(e). A claimant's RFC is the most he can do despite his impairment. *See id.* at § 416.945(a). At the fourth step, the Commissioner will compare the assessment of the claimant's RFC with the physical and mental demands of the claimant's past relevant work. *Id.* at § 416.945(a)(4)(iv). "Past relevant work is work that [the claimant] [has] done within the past 15 years, that was substantial gainful activity, and that lasted long enough for [the claimant] to learn to do it." *Id.* § 416.960(b)(1). The claimant bears the burden of proving that his impairment prevents him from performing his past relevant work. *Reynolds-Buckley*, 457 F. App'x at 863. If the claimant is capable of performing his past relevant work, the Commissioner will determine the claimant is not disabled. 20 C.F.R. § 416.920(a)(4)(iv) & (f).

Before proceeding to the fourth step, the ALJ determined King has the RFC to perform a limited range of medium work. (R. at 21). More specifically, the ALJ found King had the following limitations with regard to medium work, as defined in 20 C.F.R. § 416.967(c):

> He can perform postural activities on an occasional basis. He should avoid concentrated exposure to extreme temperatures and industrial hazards (e.g., unprotected heights, moving machine parts, operating motor vehicles). The claimant can understand, remember, and carry out detailed tasks and instructions.

(*Id.*).  At the fourth step, the ALJ determined King was capable of performing his past relevant work as a fast food manager, fast food worker, and fast food cook.  (*Id.* at 27).  With this determination, the inquiry ended because if the claimant is capable of performing other work, the Commissioner will determine the claimant is not disabled.  *Id.* at § 416.920(a)(4)(v) and (g)(1).  The ALJ concluded King had not been under a disability as defined by the SSA since December 11, 2015.  (R. 27).

**III. Standard of Review**

Review of the Commissioner's decision is limited to a determination whether that decision is supported by substantial evidence and whether the Commissioner applied correct legal standards.  *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004).  A district court must review the Commissioner's findings of fact with deference and may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner.  *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1260 (11th Cir. 2007); *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005).  Rather, a district court must "scrutinize the record as a whole to determine whether the decision reached is reasonable and supported by substantial evidence."  *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983) (internal citations omitted).  Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  *Id.* It is "more than a scintilla, but less than a preponderance."  *Id.* A district court must uphold factual

findings supported by substantial evidence, even if the preponderance of the evidence is against those findings. *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996) (citing *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)).

A district court reviews the Commissioner's legal conclusions *de novo*. *Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993). "The [Commissioner's] failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal." *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

## IV. Discussion

King makes four arguments in favor of remand. First, he contends the ALJ failed to accord proper weight to the medical source opinion from his treating psychiatrist, Dr. Fredric Feist. (Doc. 11 at 16-23). Second, King argues the ALJ improperly applied the pain standard. (*Id*. at 23-32). Third, King asserts the ALJ's finding that he can perform his past relevant work is not supported by substantial evidence and not in accordance with proper legal standards. (*Id*. at 32-36). Finally, he contends that the VE's testimony is not substantial evidence because it was based on an inaccurate and incomplete hypothetical question. (*Id*. at 36-40). The court addresses each argument below.

## A. Treating Psychiatrist Opinion

King first argues that the ALJ erred in discounting the opinion of Dr. Feist, his treating psychiatrist. (*Id*. at 16-23). King contends that Dr. Feist's opinion "is well supported by clinical and laboratory findings, and not inconsistent with other substantial evidence" and should have been given substantial weight.[7] (*Id*. at 20-23).

A treating physician's opinion "must be given substantial or considerable weight unless 'good cause' is shown to the contrary." *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir.1997). The Eleventh Circuit Court of Appeals has stated that "'good cause' exists when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir. 2004). In rejecting a medical opinion, the ALJ must clearly articulate his or her reasons for doing so.

Plaintiff contends that the ALJ erred in giving little weight to the mental health source statement signed by Dr. Feist, on July 19, 2017. (Doc. 11 at 16-23, R. 25-26, 345). The one-page form provides that Plaintiff had some limitations based on his mental health. (R. 345). The form asks the person completing it to circle "yes

---

[7] King also seems to argue that the ALJ did not clearly articulate the reasons for giving less weight to Dr. Feist. (Doc. 11 at 20). This argument is belied by the record because the ALJ clearly articulated the weight given to the opinion of Dr. Feist, as well as the reason for discounting his opinion. (R. 25-26).

or no" to the following questions:

- Can Mr. King understand, remember or carry out very short and simple instructions?
- Can Mr. King maintain attention, concentration and /or pace for periods of at least two hours?
- Can Mr. King perform activities within a schedule and be punctual within customary tolerances?
- Can Mr. King maintain an ordinary routine without special supervision?
- Can Mr. King adjust to routine and infrequent work changes?
- Can Mr. King interact with supervisors?
- Can Mr. King interact with co-workers?
- Can Mr. King maintain socially appropriate behavior and adhere to basis standards of neatness and cleanliness?

(*Id.*). The form signed by Dr. Feist circled "no" to every question except whether or not Mr. King could interact with supervisors and co-workers. (*Id.*). For those questions, "unknown" is written beside "yes" or "no". (*Id.*). The form also states "unknown" as to what percentage King would be off-task during an 8-hour day and "unknown" as to how many days a month he would miss from work due to his psychological symptoms. (*Id.*). The form states the limitations existed back to December 9, 2015, and does not list any side effects from medications. (*Id.*).

The court concludes that the ALJ has shown "good cause" for assigning little weight to the mental health source statement signed by Dr. Feist. First, the mental health source statement form is a series of questions where Dr. Feist circled responses or filled in provided blanks with absolutely no explanation for the answers given. (R. 345). The form is conclusory and has limited probative value. Indeed,

several courts have criticized "form reports" such as the one Dr. Feist provided where a physician merely checks off a list of symptoms without providing an explanation of the evidence that supports the decision. *See Wilkerson ex rel. R.S. v. Astrue*, 2012 WL 2924023, at *3 (N.D. Ala. July 16, 2012) ("form report completed by Dr. Morgan and submitted by [plaintiff]'s counsel consisted of a series of conclusory 'check-offs' devoid of any objective medical findings"); *Mason v. Shalala*, 994 F.2d 1058, 1065 (3d Cir. 1993) ("Form reports in which a physician's obligation is only to check a box or fill in a blank are weak evidence at best[.]"); *Foster v. Astrue*, 410 F. App'x 831, 833 (5th Cir. 2011) (holding use of "questionnaire" format typifies "brief or conclusory" testimony); *Hammersley v. Astrue*, 2009 WL 3053707, at *6 (M.D. Fla. Sept. 18, 2009) ("[C]ourts have found that check-off forms . . . have limited probative value because they are conclusory and provide little narrative or insight into the reasons behind the conclusions").

Second, as explained by the ALJ, Dr. Feist's treatment notes do not support the opinions stated in the mental health source statement. Dr. Feist observed that Plaintiff's insight and judgment were fair, his thought processes were logical, and his attention and concentration were adequate in November 2016 and May 2017. (R. 340, 342). Plaintiff also reported working odd jobs, and although he stated he cannot afford his medication, notes from his therapist note that he continues to buy cigarettes. (R. 341). The last note from Dr. Feist recommended King return in six

months.  (R. 342).  Simply put, nothing in the treatment notes from Dr. Feist suggests the extreme limitations circled in the mental health source statement.

For the reasons discussed above, the court concludes that the ALJ did not err in according less weight to the mental health source statement signed by Dr. Feist. The ALJ clearly articulated his reasons for assigning little weight to the opinion and the court agrees with the ALJ that the opinion was not supported by the treatment records and that the form itself is conclusory with very little probative value.

## B.  Application of the Pain Standard

King's next argument concerns the adequacy of the ALJ's evaluation of his pain complaints.  (Doc. 11 at 23-32).  King contends he "had objective causes of pain and symptoms including degenerative joint disease of right hip and bipolar disorder with psychosis."  (*Id*. at 24).  King also asserts that "[t]he ALJ's analysis is deficient.  The issue is not whether the objective evidence supports the allegation of pain.  The ALJ did not apply the proper pain standard."[8]  (*Id*. at 32).

In addressing a claimant's subjective description of pain and symptoms, the law is clear:

> In order to establish a disability based on testimony of pain and other symptoms, the claimant must satisfy two parts of a three-part test

---

[8] The Commissioner contends that because King "provided no discussion or analysis to support his argument," the court should deem it abandoned.  (Doc. 17 at 11).  The court agrees with the Commissioner that the argument is bare-boned and provides little analysis.  In fact, the two sentences quoted by the court are the only sentences in the almost nine pages addressing the pain standard that could arguably be taken as applying the pain standard to the facts at hand. Nevertheless, the court will still address the merits of the claim.

showing: (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain. *See Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991). If the ALJ discredits subjective testimony, he must articulate explicit and adequate reasons for doing so. *See Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987).

*Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002); *see also* 20 C.F.R. §§ 404.1529. If a claimant satisfies the first part of the test, the ALJ must evaluate their intensity, persistence, and effect on the claimant's ability to work. *See* 42 U.S.C. § 423(d)(5)(A); 20 C.F.R. §§ 404.1529(c) & (d); 416.929(c) & (d). While evaluating the evidence, the ALJ must consider whether inconsistencies exist within the evidence or between the claimant's statements and the evidence, including his history, medical signs and laboratory findings, and statements by medical sources or other sources about how his symptoms affect him. 20 C.F.R. §§ 404.1529(c)(4) & 416.929(c)(4). In determining whether substantial evidence supports an ALJ's credibility determination, "[t]he question is not . . . whether the ALJ could have reasonably credited [the claimant's] testimony, but whether the ALJ was clearly wrong to discredit it." *Werner v. Comm'r of Soc. Sec.*, 421 F. App'x 935, 939 (11th Cir. 2011). The ALJ is not required explicitly to conduct a symptom analysis, but the reasons for his or her findings must be clear enough that they are obvious to a reviewing court. *See Foote v. Chater*, 67 F.3d 1553, 1562 (11th Cir. 1995). "A

clearly articulated credibility finding with substantial supporting evidence in the record will not be disturbed by a reviewing court." *Id.* (citation omitted).

The ALJ found that King's medically determinable impairments could reasonably be expected to produce the alleged symptoms, but his statements regarding the intensity, persistence, and limiting effects of these symptoms were not entirely consistent with the medical evidence and other evidence in the record. (R. 22). As discussed below, the court finds that the ALJ's determination is supported by substantial evidence.

At the administrative hearing, King testified that he has a bad hip that prevents him from standing for long periods of time and he needs to have hip replacement surgery. (R. 35-36, 37). Specifically, he stated that he can stand for about 15 to 20 minutes, but then needs to sit. (R. 42). The pain does not stop when he sits, however, and he just "deal[s] with the pain." (*Id.*). Aleve relieves his pain some and he has been prescribed prescription pain medicine, but he cannot afford to pay for either medicine. (R. 37). King testified that he also has problems concentrating and remembering and that he sometimes hears voices in his head and sees things that are not real. (R. 36, 39-40). Concerning his activities, King states that he works two or three days a month with his brother's lawn care business. (R. 33). He attends church, reads the Bible, and plays solitaire. (R. 35).

With regard to King's hip, the ALJ noted the following medical evidence that was not consistent with the severity of pain and limitations alleged by King:

- February 6, 2016 Consultative exam by Dr. Sathyan Iyer who found that, despite limited range of motion of the left hip, King had full range of motion of the knees and ankles, normal muscle power in the lower extremities, normal gait, could walk on his heels and tiptoes, and did not use an assistive device. (R. 22, 293-94);
- February 17, 2016 consultative exam by June Nichols, Psy.D., where King alleged right hip and knee pain, but noted King's reported daily activities of cooking, cleaning up the yard, and cleaning around the house. (R. 299-301);
- April 2016 visit to CED Mental Health where King reported he was "getting in walks" and helps to take care of the yard. (R. 337);
- July 2016 Quality of Life examination, where King alleged severe pain in his hip with aggravation from active and passive movement and prolonged standing. (R. 302). The provider noted a decreased range of motion in King's hip and antalgic gait. (R. 305). Ibuprofen was prescribed with exercise and stretching encouraged. (*Id*.). King returned for a follow-up on September 16, 2016, and it was noted that x-rays showed severe osteoarthritis in his right hip. (R. 316). He was prescribed meloxicam to be taken twice a day. (R. 317). In October 2016, he informed the provider that his pain continued and he could not afford the prescribed medication. (R. 321).
- In April 2017, King was seen at the Gadsden Regional Medical Center following a car accident. (R. 354-64). Although he complained of back and neck pain, King did not mention hip pain and the provider notes normal range of motion of his musculoskeletal system and normal strength. (*Id*.).

Based on the above and King's testimony the ALJ concluded that he medical evidence showed that King's symptoms were not continuous in nature, his physical examinations have been basically normal, his symptoms have been controlled with minimal treatment since December 2015, and he has maintained some ability to

complete daily activities with few limitations, including working two to three days a month for his brother's lawn service. (R. 23). Substantial evidence supports this finding regarding his physical impairment.

With regard to his bipolar disorder with psychosis, the ALJ detailed the medical records from 2009 to December 2017. (R. 23-25). The treatment records continually note conservative treatment with medication, and that his symptoms were well-controlled with prescription medications when he was complaint. (R. 299-301, 334-43). The ALJ noted, however, that King repeatedly alleged financial difficulty filling his prescriptions, but CED provided him with resources to find help obtaining his medications and that King used money to buy cigarettes which could have been used to purchase his medications. (R. 25, 335, 338); *see Sias v. Sec'y of Health & Human Servs.*, 861 F.2d 475 (6th Cir. 1988) (taking judicial notice of cost of purchasing cigarettes in rejecting plaintiff's claim that he could not afford support hose prescribed for his thrombosis). Additionally, despite his mental impairments and related symptoms, King was able to work part-time two or three days a month with his brother, even without medication compliance. (R. 25, 339-41). The ALJ further noted that his diagnosis was long-standing and had not prevented work in the past, nor prevented him from working part time, tending to his personal needs, being

independent in his daily living activities[9] and remaining socially active.  (R. 26).

Substantial evidence supports the ALJ's finding regarding his metal impairments.

In sum, the ALJ correctly considered "the consistency of [King's] statements"

with the remainder of the evidence.  *See* SSR 16-3p, 2017 WL 5180304, at *8. His

determinations are supported by substantial evidence.  This claim, therefore, is

without merit.

### C.  Past Relevant Work

King next argues that the ALJ failed to adequately develop the record as to

the physical requirements of his past work.  (Doc. 11 at 32-36).  The Commissioner

responds that the ALJ adequately considered King's prior work history, including

the VE's testimony and the DOT, and substantial evidence supports the ALJ's

determination that King could perform his past relevant work.  (Doc. 17 at 15-17).

The court agrees with the Commissioner for the following reasons.

"The ALJ has a basic duty to develop a full and fair record." *Henry v. Comm'r*

*of Soc. Sec*., 802 F.3d 1264, 1267 (11th Cir. 2015).  Where "there is no evidence of

the physical requirements and demands of the claimant's past work and no detailed

description of the required duties was solicited or proffered," the ALJ "cannot

properly determine" the nature of the claimant's past work, and, therefore, cannot

say whether the claimant is still able to perform that work given his current

---

[9] King testified that he lived by himself in a home owned by his sister.  (R. 33).

limitations. *Schnorr v. Bowen*, 816 F.2d 578, 581 (11th Cir. 1987). The Eleventh Circuit has remanded for further inquiry, for instance, where the record contained "no evidence concerning whether [the claimant] used equipment, the size and weight of items she was required to use, whether she scrubbed floors or merely dusted, or whether she was required to move furniture" in her past work. *Nelms v. Bowen*, 803 F.2d 1164, 1165 (11th Cir. 1986).

Here, the record contains evidence regarding the demands of King's past work as a fast food worker, manager and cook. King completed a "Work History Report" as part of his application. (R. 195-96). For his former job, the form instructed him to answer a series of questions, including, but not limited to:

- "Describe this job. What did you do all day?"
- "In this job, how many total hours each day did you: Walk? Stand? Sit? Climb? Stoop? (Bend down and forward at waist) Kneel? (Ned legs to rest on knees) Crouch? (Bend legs & back down & forward) Crawl? (Move on hands & knees) Handle, grab or grasp big objects? Reach? "Write, type of handle small objects?"
- "Explain what you lifted, how far you carried it, and how often you did this."

(*Id*. at 196). The form also asked King to indicate for each job the "heaviest weight lifted," as well as the weight most "frequently lifted . . . from 1/3 to 2/3 of the workday." (*Id*.).

With regard to the shift supervisor, King answered some of these questions indicating, for instance, that he stood for 6 hours and sat for 2 hour each day. (*Id*.).

He did not indicate that he had to stoop,[10] kneel, crouch, crawl, or handle, grab or grasp big or small objects. (*Id*.). He did state that he had to "put stock in the freeze[r]" and had to carry that stock "three or four feet twice a week." (*Id*.) King indicated that he frequently lifted twenty-five pounds.[11] (*Id*.). King also supervised employees while he was working. (*Id*.).

At the hearing, the ALJ questioned King about his past work. (R. 43-44). King testified that he was a shift supervisor at Kentucky Fried Chicken, but he started off as a cook. (R. 44). He worked the cash register, and "did just about every job in the KFC" as the supervisor. (*Id*.). Additionally, the ALJ asked the vocational expert to identify his past relevant work of King. (R. 45). The VE described and used the job of a fast food manager and classified the job as "[n]ormally light, skilled at the level 5" but as performed, the VE moved the level to medium. (*Id*.). With regard to working the cash register, the VE said this was "light, unskilled at the level 2." (*Id*) The VE also described the fast food cook position as "medium and skilled at the 5 level." (*Id*.). With all three descriptions, the VE referred the ALJ to the listing for the job in the Department of Labor's Dictionary of Occupational Titles ("DOT"). (*Id*.). *See* 20 C.F.R. § 416.960(b)(2) (stating that an ALJ may consult a "vocational expert" and the "Dictionary of Occupational Titles" at Step Four). The DOT contains

---

[10] On another form, King stated that he stooped and reached for 1 hour a day. (R. 176).

[11] While King checked the box stating he frequently lifted twenty-five pounds, in the question before, he stated that the heaviest weight he lifted was twenty pounds. (R. 196).

detailed descriptions of the duties and physical requirements associated with each occupation, as generally performed in the economy.

Recently, in a case very similar to the one at issue, the Eleventh Circuit concluded that "[t]he Work History Report, testimony of [claimant] and the vocational expert, and the DOT combine to paint a full picture of [claimant]'s past relevant work . . . " and found that such evidence sufficient to compare the claimant's current abilities to the demands of her previous employment. *Holder v. Social Security Admin.*, 771 F. App'x 896, 900 (11th Cir. 2019). The ALJ here had the same information in making the determination that King could return to his past work. The court finds that this determination is supported by substantial evidence and Plaintiff is not entitled to any relief.[12]

### D. VE Testimony

Kings' final argument is that the VE's testimony is not supported by substantial evidence because it was based on an inaccurate and incomplete hypothetical. (Doc. 11 at 36). Specifically, King contends that the hypothetical did

---

[12]Alternatively, the court finds that any purported failure by the ALJ to specifically address King's relevant work history is harmless and not a cause for reversal or remand for the reasons stated above. There was plenty of evidence in the record regarding Plaintiff's past work history and the demands of the jobs. *See Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir. 1983) (holding that the complained-of error was harmless because it did not have an impact on the step being challenged); *Reeves v. Heckler*, 734 F.2d 519, 524 (11th Cir.1984) (rejecting a challenge to an ALJ's conclusion as harmless error when the ALJ had considered the relevant evidence in making the disability determination); *Hunter v. Comm'r of Soc. Sec.*, 609 F. App'x 555, 558 (11th Cir. 2015) ("To the extent that an administrative law judge commits an error, the error is harmless if it did not affect the judge's ultimate determination.").

not accurately state his impairments or his RFC, but instead assumed that King could work. (*Id*.). The court disagrees.

"In order for a vocational expert's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." *Wilson v. Barnhart*, 284 F.3d 1219, 1227 (11th Cir. 2002). "The hypothetical need only include the claimant's impairments, not each and every symptom of the claimant." *Ingram v. Comm'r of Soc. Sec. Admin*., 496 F.3d 1253, 1270 (11th Cir. 2007). Further, the ALJ is "not required to include findings in the hypothetical that the ALJ had properly rejected as unsupported." *Crawford v. Comm'r of Soc. Sec*., 363 F.3d 1155, 1161 (11th Cir. 2004).

Here, the ALJ found that the evidence demonstrated that King retained the ability to work at his past relevant work as a fast food manager, worker and cook, despite his impairments. (R. 27). The ALJ's hypothetical questions to the VE fully accounted for King's impairments and limitations, as demonstrated by the medical evidence of record. (R. 45-48). King does not specify what information was inaccurately stated by the ALJ or left out by the hypotheticals posed to the VE, (doc. 11 at 36-40), and the court can find none. The court, therefore, concludes that the hypotheticals were not incomplete or inaccurate, and this claim is without merit.

## V. Conclusion

Having reviewed the administrative record and considered all of the arguments presented by the parties, the undersigned find the Commissioner's decision is supported by substantial evidence and in accordance with applicable law. Therefore, the court finds that the ALJ's decision is due to be **AFFIRMED**. A separate order will be entered.

**DATED** this 18th day of December, 2019.

_____
**JOHN E. OTT**
Chief United States Magistrate Judge